## RICHARDSON v. HUGGINS & a.

It will not be presumed that a claim not submitted was considered and embraced in an award, merely because the terms of the award are broad enough to include it; the fact must be shown, in order to impeach the award.

Where, in a submission of partnership affairs, it appears that a joint and several note was included in the award, it will not be presumed that the note was not given for a partnership debt.

If a demand not submitted is considered and included in an award, the award will not be set aside for that cause, if the amount is made certain, and is released, or discharged.

A case stated by the court, for the purpose of transferring exceptions taken and questions raised on a trial at *nisi prius*, will not be discharged, and the cause sent for a new trial, unless under very special circumstances.

DEBT, upon an arbitration bond, dated August 21, 1845. Plea, *non est factum*, with a brief statement, that the award was void, for the reason that the referees had exceeded their authority, in awarding, that the defendant, Huggins, should indemnify and hold harmless the plaintiff, against all debts then, at the date of the award, outstanding against either of the firms of Richardson & Huggins and O. B. Huggins & Co., of which the plaintiff and Huggins had been partners, inasmuch as there were sundry debts, then existing against the firm of Richardson & Huggins, which had accrued after the twenty-first day of February, 1846, and before the date of the award, December 30, 1846.

The bond was signed by Huggins and the other defendants. The condition was as follows: "Whereas the said Huggins and Richardson have heretofore been in partnership, in business, using the firm of Richardson & Huggins, and of O. B. Huggins & Co., and there are sundry debts and demands due from said parties, as such copartners, and there are notes and accounts and sundry personal property belonging to, and held by, said Richardson & Huggins, as copartners, and certain separate accounts between them, as·individuals; and the said parties hereby agree, each with the other, that they will immediately

Richardson *v.* Huggins.

hereafter settle and adjust their individual accounts with each other; and each party holding notes, accounts, or other personal property of said partnership, shall bring forward and exhibit the same to the other, and will equally divide said property, and give said Richardson his choice of the property, when divided and set apart, by said Huggins; and as either of said parties shall receive the partnership property so divided, they shall each of them assume and pay to the amount of the property so received, upon the partnership debts and liabilities, and so continue to do, until all the partnership debts are paid, each partner paying his half of the debts, as he receives the property. And whereas it may so happen, that the said Richardson and Huggins will not be able to adjust and settle all matters and things between them, and with a view to make provision for a full and perfect settlement of all things, which are now, or may hereafter be between them, they hereby appoint Levi Chamberlain of Keene, Gardner C. Hall of Brattleboro', and Otis Amidon of Chesterfield, arbitrators, indifferently elected and named, as well on the part of said Huggins, as on the part of said Richardson, to arbitrate, award, order and determine of and concerning all manner of actions, causes of actions, suits, bills, bonds, controversies and demands of every nature, which may exist between said parties, at the expiration of six months from the date hereof, and which shall not, within said term of six months, be adjusted and settled between said parties; and at the expiration of said term of six months, either party may call out said arbitrators, — said Levi Chamberlain, Esq., being appointed chairman, — and to notify the time and place of meeting; and said arbitrators shall, and may, exercise the power and authority of a court of equity, and may require the production before them of all such books, writings and papers, which they may deem necessary to a full examination and determination of all matters and things in controversy, and may, if they think proper, put the parties, or either of them, to answer interrogatories, on oath; and each party shall abide by, and perform the award of, said arbitrators, and shall execute such releases, discharges and conveyances, and any other papers, deemed by said arbitrators pro-

per to be executed, to carry into full effect their award; which award, to be made in writing, under the hands of said arbitrators, or a majority of them, and ready to be delivered to said parties, within sixty days next after their sitting to hear said parties. Now if the said Huggins shall do and perform all things by him to be done and performed," &c., " then," &c.

The award was as follows : " We, the undersigned, having been appointed arbitrators, to award, arbitrate, order and determine of and concerning all manner of actions, suits, bills, bonds, controversies, and demands of every nature, existing . between Oliver B. Huggins and Joshua Richardson, both of Chesterfield, in the county of Cheshire, agreeably to certain bonds mutually executed, each party to the other, with sureties, and dated on the twenty-first day of August, 1845, having given due notice to the parties, and having met them at the time and place appointed for meeting, ( viz : on the thirtieth day of December, A. D., 1846, at Burt's tavern, in said Chesterfield,) and having heard the parties, by themselves and their counsel, and their several proofs and allegations, all of which we have duly considered, do hereby award, arbitrate, order, and determine of, and concerning the matters submitted to us, as follows, that is to say : " The said Joshua Richardson shall, on or before the fifteenth day of March next, make, execute, acknowledge, and have ready to deliver, and deliver, if practicable, to said Huggins, a good deed of quitclaim, with a release of the right of dower, by the wife of said Richardson, of certain real estate in the Factory village in said Chesterfield, owned by the parties, as tenants in common, called the " Cobb lot," and also of a certain lot of wood land, lying about a mile southerly of said village, owned by the parties, as tenants in common, and of any other real estate, in which the parties may be jointly interested ; said deed to contain a covenant of warranty against all claims, arising by, from or under said Richardson, on account of his separate or individual debts, and of any conveyance made by him, separate from said Huggins. The said Richardson shall further, on or before the fifteenth day of March next, make and execute and deliver, if called for, a good and valid release and

assignment to said Huggins of all the goods, chattels, notes, judgments, mortgages, and all other property or securities for property belonging to the late firms of Richardson & Huggins, or of O. B. Huggins & Company, and shall, on demand, deliver to said Huggins the books and accounts, and all property or evidences of property in said Richardson's possession, belonging to said firms, or either of them; and the said Richardson shall not do, or cause to be done, any thing to molest or impede the said Huggins in availing himself of the said property, in such manner as he shall deem most beneficial to himself, at his own cost and charge. The said Richardson should further fully indemnify, exonerate and save harmless the said Huggins from all demands in favor of one Luke Richardson, or made payable to him, against the parties, whether in the name of either of said firms, or joint and several.

"And we do further award, order, arbitrate and determine, that the said Huggins shall fully indemnify, exonerate, and save harmless the said Richardson from all debts, dues, bonds, mortgages, claims, securities or liabilities of any kind due from or outstanding against either of the firms aforesaid, and from all notes or securities given by the parties jointly, or jointly and severally, in their individual names, before the date of this award, except the claims of the said Luke Richardson above mentioned.

"Each party shall execute to the other, a receipt, or discharge of all claims in favor of either of said firms, and of all accounts in favor of himself individually, &c." Signed, &c.

It appeared in evidence, that there was a claim existing against said firm of Richardson & Huggins, in favor of Harvey Carleton, which accrued and became due for services rendered for said firm, between the twenty-eighth day of March, 1846, and the fifth day of September, 1846, and which claim was outstanding and due at the date of said award, and which Huggins paid in the spring of 1849, and it was contended and objected, that the award was void, inasmuch as it embraced the same and awarded its payment to be made by Huggins.

A verdict was taken for the plaintiff, for the penalty of the bond; subject to the opinion of the superior court, upon the

foregoing case.  If the court should be of the opinion that the arbitrators did not exceed their authority, and that said award is valid, judgment is to be rendered upon the verdict, and execution to issue in favor of the plaintiff, for such sum as he shall prove to the court, that he is, in equity, entitled to recover by reason of said bond and award ; otherwise the verdict to be set aside, &c.

*J. Parker*, with whom was *Vose* & *Carlton*, for the defendants, contended, that the award was void, for the reason that the referees exceeded their authority, in awarding that the defendant Huggins, should indemnify, exonerate and save harmless the said Richardson from all debts, dues, bonds, notes, mortgages, claims, securities or liabilities of every kind due from, or outstanding against either of the firms afores id, and cited *Shearer* v. *Handy*, 22 Pick., 417, and cases cited ; *Ross* v. *Boards*, 3 Nev. & P. 382, *S. D.* 8 A. and E., 290; *Mayor of N. Y.* v. *Butler*, 1 Barb., 325, Kyd on Awards, 140, and 141, and cases cited.

*Wheeler* with whom was *Handerson* for the plaintiff.

1.  The referees, being clothed with the powers of a court of equity, were not required to award a definite sum to be paid, as in an award at common law.  They might as well order the conveyance of real estate ; or the payment of the claim of a third person, about which there was no controversy ; or that one party should indemnify the other against a claim, existing against both or either, as to award the payment of money.  What the defendant objects to, in this case, is, in part, but a mode of payment of part of the sum found due to Richardson.  *Byers* v. *Van Deusen*, 5 Wend., 268.

2.  The language of the award is general ; but it does not appear that Carlton's claim was laid before the referees, or intended to be embraced in the award.  Though the language of an award may embrace more than is submitted, the award will be upheld, unless *it is expressly shown*, that more was laid before the referees and decided by them. *Solomons* v. *McKinistry*, 13 Johns., 28 ; *Joy* v. *Simpson*, 2 N. H. Rep., 179 ; *Parsons*

v. *Aldrich,* 6 N. H. Rep., 264; Kyd on Awards, 170 ; *Caton* v. *McTavish,* 10 Gill. & Johns., 192.

3.   When arbitrators exceed their authority, the award is not necessarily bad *in toto.* It may be good for that which was submitted, and void for the remainder only, if the two can be distinguished.   In this case, if the award is void in part, the line o distinction is easily perceived, and the plaintiff is entitled to enforce his remedy upon the bond, so long as he claims, as in the present action, nothing subsequent to February, 1846.   *Banks* v. *Adams,* 10 Shep., 259 ; *Peters* v. *Peirce,* 8 Mass. Rep., 399 ; *Madin* v. *Williams,* 13 Johns. Rep., 264 ; *Skillings* v. *Cooledge,* 14 Mass. Rep., 43 ; *Addison* v. *Gray,* 2 Wils., 293.

*Parker,* in reply.

In this case the rights of sureties are involved.   The case stands differently from what it would do, if Huggins were alone interested.

1.   We deny the plaintiff's position, that the award, so far as the Carlton matter is concerned, may be regarded as equivalent to an award of the payment of so much money to a third person.   Perhaps an award of payment, of a specified sum, to a third person, may be made, but that is a different matter from an award of payment of debt.   It is not to be inferred, from this award, that it was intended to award a payment of money to be made to a third person, since there is no award that a specific debt even shall be paid, but all debts of certain classes are to be paid, without regard to date ; showing that the referees overlooked the limitation as to time.

2.   This demand is not separable from the rest of the award. There is nothing upon the face of the award, by which this item, and others like it, are to be separated from the rest of the award. The referees took this claim into their consideration ; they directed the payment to be made by one party ; what allowance did they make to him, against the other party, or otherwise, in consideration of this payment ?   This does not appear upon the award, and cannot be known, and the whole award is vitiated. The referees could derive no authority for this part of their

award, from the acts or acquiescence of Huggins. His sureties are not to be affected by his acts.

3. We say, the award exceeds the submission in two respects.

(1.) The submission construing the whole instrument together, was confined to demands between the parties. The award embraces matters between these parties and other persons, and is therefore bad. Wats. Arb., 55, p. 106; *Fisher* v. *Finley*, 11 East., 189.

(2.) The submission is confined to actions, &c. This demand is included within none of these words. "Controversies" did not include it, since there was no controversy as to outstanding demands of the partnership.

The case of *Byer* v. *Van Deusen*, 5 Wend., 258, is no precedent here, since the language is much broader than it is here.

This award, also, embraces joint and several notes to third persons. These cannot be included, because they are not either partnership demands, or demands between the parties; and the award is not limited to such claims existing at the end of six months from the date of the bond. 4 Rawle, 299; 5 Litt., 32; 1 Mason, 368. Sureties are not to be charged beyond the fair import of their stipulations.

At the July term, 1851, in Sullivan county, the opinion of the court was delivered by

BELL, J. The award of the arbitrators seems to us to be within the authority of the arbitrators, except as to the question of time. The bond recites the partnership; binds the parties to a division of the property, and an assumption and discharge of the partnership debts; and with a view to make a full and perfect settlement of all things which were, or hereafter might be, in controversy between them, designates arbitrators to determine all controversies and demands which should exist between them, at the end of six months from the date, with the powers of a court of equity; and binds the parties to perform the award, and to execute such releases, discharges, and conveyances, and any other papers, deemed by the arbitrators proper

Richardson *v.* Huggins.

to be executed, to carry into effect their award. It does not admit of a doubt, that it was intended to confer upon the arbitrators, full powers to adjust the matters in dispute, relative to the partnership, in such manner as should seem to them just. And the manner in which they have exercised their powers, does not seem open to any reasonable objection. *Byers* v. *Van Deusen*, 5 Wend., 268.

So far as the indemnity awarded extends to claims due up to the date of the award, it goes beyond the power conferred; but the court will not intend, that claims not embraced by the submission, were in fact considered and decided by the arbitrators, merely because the terms of the award are broad enough to cover such claims. *Joy* v. *Simpson*, 2 N. H. Rep., 179, and cases cited. *Parsons* v. *Aldrich*, 6 N. H. Rep., 264. The party may impeach the award, by showing that such claims were in fact considered and embraced by the decision; and as to them the award will be held void. And if it appears that the part so unauthorized cannot be separated, the whole must fall together. *Thrasher* v. *Haynes*, 2 N. H. Rep., 429; *Adams* v. *Adams*, 8 N. H. Rep., 82.

It is said, there is here no difficulty in distinguishing between what is authorized and that which is not, and so far as we can judge from the case, this suggestion may be well founded. The award being, that the defendants should indemnify against all claims to the date of the award, while the submission gave power to award only as to claims existing at the end of six months from its date, it would seem easy to distinguish by the mere date alone, the demands as to which the award is properly operative, from those which are out of the submission. This is a point, which it is not necessary to decide, and perhaps the case does not furnish the necessary data for a correct decision. The award is merely inoperative, as to claims of too late a date to be embraced in the award, unless they are such that they cannot be separated from the residue; and we do not feel, by any means, called upon to presume that claims, arising more than six months after the date of the bond, were in fact considered and decided, and then that those claims are of such a

character, that they cannot be distinguished, merely for the purpose of invalidating this award. There must therefore be judgment for the plaintiff for the penalty of the bond.

*Parker*, for the defendant, then moved, that the case stated may be discharged, and the action sent to a new trial, and desired to be heard upon this motion, upon evidence to be taken before the next term ; and the case was continued for that purpose.

And now at this term, evidence, of which the following is an abstract, was produced and read, namely :

*Gardner C. Hall.* — One of the arbitrators — attended the hearing. He identifies a book marked " A," as one produced before the arbitrators. The matters laid before the arbitrators consisted of accounts of the assets of Richardson & Huggins, and O. B. Huggins & Co., and accounts of their various debts due to others, and private accounts of each partner with these firms, and with each other. The arbitrators passed upon all matters presented to them in said book, " A." H. Carlton's account of $31.00, was before them, and was considered.

Thinks joint and several notes of Richardson & Huggins were passed upon by the arbitrators, but is not certain. Remembers there was an indebtedness to H. Seymour & Co., presented as a company debt and evidenced by notes. Does not recollect if they were joint and several. He finds in the book " A " memoranda of two notes, for $1000 each, dated first Nov., 1839, payable to H. Seymour & Co., with notes of these endorsements on one : Nov. 1st, 1840, $60 ; Feb. 1st, 1842, $500 ; Nov. 1st, 1844, $269.16 ; on the other, Nov. 1st, 1840, $60. Has no doubt these claims were passed upon by the arbitrators.

The sureties of Huggins were not present. They took no part in the trial ; but one of them was there attending to other business of his own. On cross-examination, he testifies, that the book " A " is Huggins' writing, and was produced by him at the hearing. He considered, that Huggins claimed to have all the matters contained in it considered by the arbitrators. He appeared to be the book-keeper, and all the showing so far as the accounts and notes were concerned, was made by him. No

objection was made by him, or his counsel, to the consideration of any matter on which the arbitrators passed.

`Otis Amidon.` — Was one of the arbitrators with G. C. Hall and L. Chamberlain; has read Hall's deposition. The facts stated in it are true, according to his best recollection. The sureties were not present at the hearing or award.

*Moses Dudley.*—Has examined copies of notes annexed, and compared them with the originals. He purchased the notes of S. Dinsmoor, July 12th, 1845, and took an assignment · of a mortagage given . to secure them, at the request of Richardson, who paid him $50, for doing so. He had a suit brought on the mortgages in the name of S. Dinsmoor and H. Seymour, and had judgment at the March term, 1847, upon which he took possession, which was continued afterwards. The notes continued his property till after possession taken. The judgment he obtained was satisfied in Sept., 1847, with money paid him by Joshua Richardson. The possession was taken of an Auger and Gimblet Factory & Store, the same occupied by Richardson & Huggins. He understood from Richardson, the money to pay his mortgage was raised by a mortgage of this factory.

[COPY.]

" Nov. 1st, 1839. For value received we jointly and severally promise to pay Henry Seymour & Co., or order, one thousand dollars, in two years, with interest annually.

$1000.	.	OLIVER B. HUGGINS,
JOSHUA RICHARDSON,
S. S. CAMPBELL.

Upon this note were the following indorsements :

" Nov. 1st, 1840, Received one year's interest.

" Feb. 1st, 1842, Received five hundred dollars.

" Nov. 1st, 1844, Received two hundred sixty-nine dollars, and sixteen cents.

Without recourse.	HENRY SEYMOUR & Co.,
By Saml. Dinsmoor."

A second note in same words, except two last endorsements.

*H. Carlton.*—Had an account against Richardson & Huggins, in 1846, amounting to $31.01. Of this, $21.91 was charged

between March 28th, 1846, and Sept. 24th, 1846, the rest before 1846. It was due and unpaid Dec., 1846. He was present at the hearing before the arbitrators. His claim was included in the list of outstanding debts of the firm, laid before the arbitrators. It was paid in March, 1849, by O. B. Huggins. He understood the Seymour notes were included in the award. They were talked about. He verifies the signatures of the notes copied above, " Richardson & Huggins," signed by Huggins. " S. S. Campbell," by himself. Part of the claim of $21.91 was for services in collecting old demands of the partnership; but twelve dollars was for services rendered March term, 1846, in suits brought against Richardson & Huggins.

*Parker*, for the defendants.

The defendants, except Huggins, are sureties. We ask, that the case may be set aside and the action sent back for a new trial, on the ground, that the referees have exceeded their authority. Having considered, and included in their award, matters which had arisen after the expiration of six months from the date of the bond, by reason of which the award is void for the excess, and, as we believe for the whole.

The trial proceeded on the ground, that the award was void because it included, in terms, the claim of Carlton, which was of too late a date to be embraced in the submission. This demand alone was specified, and the trial went on the ground that all the claims included in the award must have been considered, to date; but no evidence was offered, that the claim of Carlton was in fact, passed upon and allowed. The court hold it is not to be presumed, that demands not submitted, were, in fact, considered. We are prepared to prove, and our evidence now shows, that the claims in question were actually adjudicated upon. We ask, that situated as these sureties are, the omission may not prejudice us, but that we may have opportunity to amend our specification, to enable us to try this question. We say the award makes Huggins liable for all demands existing against the partnership, and that such claims were not claims existing between the parties; and it binds Huggins to indemnify

Richardson v. Huggins.

Richardson against joint and several notes, not referred to in the submission, and which were not demands existing between the parties. The sureties offer evidence of the character of their allowance by the arbitrators, and hope to be relieved. They ought not to be precluded, nor prejudiced, by any neglect of Huggins to object to these claims. He could not authorize the referees to considered any question or claim which was not clearly included in their bond.

*Wheeler*, for the plaintiff.

It is not within the ordinary practice of this court to discharge a case, sent here from the common pleas, after a decision upon the merits ; and the defendants have failed to present any sufficient grounds for the extraordinary interference which they ask. The late hour at which the testimony was taken, and the absence of the plaintiff in a distant State, have prevented the taking of testimony on his part. The motion is therefore, to be decided upon the defendants, evidence, in connection with the facts which appear in the case.

The case is one of peculiar hardship to Richardson. The partnership property was, to a great extent, the fruit of his labor and money, but the management of it has been in the hands of Huggins. The plaintiff's only remedy has been upon the arbitration bond. After numerous and protracted hearings, the arbitrators reached a result which is set out in the award. Most of the assets were awarded to Huggins, with the obligation to pay certain debts, and to indemnify the plaintiff against certain claims. Huggins thus acquired a right to the assets, which has been fully exercised. The partnership debts are still unpaid, and Richardson is still liable for them, as between him and the creditors. He is wholly without remedy, except under this award. In a motion, addressed to the discretion of the court, it is believed that these considerations are worthy of being weighed.

No material error or omission in the case has been shown. The testimony discloses that the Seymour claim was in the form of a joint and several note, and that a portion of Carlton's claim was for services rendered subsequently to February, 1846. It

further shews that these claims were presented for allowance, by Huggins, as partnership debts, and that Carlton's claim has been paid by Huggins. It is not very clear why a joint and several note may not as well be a partnership debt, and be in controversy, as a debt contracted in the partnership name. It is believed to be not unusual for a creditor to prefer a joint and several note with a surety, as in this case, to a partnership note. The form of the security does not determine the question whether the claim is really a partnership debt or not. The note having been presented, and passed upon, under the circumstances which appear in this case, it must be presumed to have been a partnership debt; and it is not, therefore, necessary to consider the authority of the referees, in regard to joint and several notes not connected with the partnership.

There was no valid objection to the allowance of the whole of Carlton's claim. Huggins was allowed a fund for the payment of this and the other debts. It was presented for allowance by him, and has since been paid by him. He does not stand in a position to object; and the sureties are, in no way, affected by the transaction. Even if a portion of this claim was improperly considered, it can now be readily separated from the rest; and so furnishes no just ground of exception to the award.

*Parker,* in reply.

Our motion is addressed to the discretion of the court. And we agree, that the case is not to be sent back, unless we show it to stand on peculiar ground; and that we think we have shown. We thought it was to be inferred, that demands, not embraced in the submission, were considered and adjudicated, because the terms of the award did include them, and therefore we did not show that they were so considered *aliunde.* We say, therefore, that the merits of the case have not been tried.

We now show, that other matters were included in the adjudication, which ought not to have been. It is not controverted that they were not in the submission. It is only suggested that the payments awarded were mere modes of payment to Richardson. We think the evidence goes further. It not only shows

that these payments were awarded to be made, but that they were examined as a part of the matters submitted. The effect of which is to bind the surities to pay more than they are bound to do, and more than they would be required to do, if only the matters submitted had been considered. When the suit is against sureties, it is fair matter of enquiry whether they are bound, even if Huggins is bound. They were not present. Huggins might perhaps bind himself by his acquiescence, or neglect to object, but he could not bind them. He had no authority for that purpose.

Is the award separable so as to be good for part and bad for part? Certainly this is not a case of that kind. No part can be separated, unless the necessary facts appear on the face of the award. Here, then, is nothing on the award, by which any distinction can be made; and the court will go into no independent enquiry, as to what matters were considered by the referees, or allowed.

The court cannot say this award is bad, as to the Carlton note, because this swelled the amount to be divided between the parties. Both this and the notes, must have been included in the basis upon which the award was made, and must have increased the amount to be charged to Huggins, for which the sureties were to be holden.

BELL, J. An application to discharge a case, and send a cause to a new trial, is addressed to the discretion of the court, and requires an extraordinary exercise of their powers, which can be allowable and proper, only, when it is made clear that it is necessary, to prevent injustice. It has been occasionally done where a statement has been agreed upon by the parties, and submitted for the opinion of the court, where it has been apparent that the parties have fallen into error in relation to the facts, or their bearing. *Heywood* v. *Wingate,* 14 N. H. Rep., 73. But it is very unusual, if indeed the instance has ever occured, that a case drawn by the court, for the purpose of presenting the exceptions taken, and the questions raised on the trial, should be set aside for the purpose of enabling a party to remedy, upon a new trial, any mistake he discovers he has

made, in relation to the law applicable to his case ; especially
where it is not suggested, that the case fails to state truly, the
occurrences upon the trial, so far they are material to the points
designed to be raised.　It is not designed to be stated, that
cases may not arise where such application may not be proper
to be made, and to be granted by the court; but we think it
must be incumbent upon the party, who presents such applica-
tion, to satisfy the court, that by adopting this course they will
do substantial justice to the parties, or that by refusing to adopt
it they will permit such injustice to be done to him, as he will be
unable to relive himself from, by the ordinary course of judicial
proceedings.

　It is not shown here nor suggested, that the parties were not
fairly and fully heard ; that the referees were not both competent
and upright ; that the award was not intended to be a settlement
of the precise matters submitted and of nothing more ; nor that
the decision is not, on the whole, calculated to do substantial
justice between the parties to the controversy.　But, it is said,
all the other defendants are merely sureties for Huggins ; that
they have bound themselves for his performance of the award to
be made, as to certain partnership and other transactions, up to
a certain date, and for nothing further ; and that however just an
award, as to other matters may be, as to the parties immediately
concerned, they, as sureties to a limited extent, ought not to be
held liable beyond the fair and reasonable construction of the
stipulations, into which they have entered by their bond.　To this
claim of the sureties we feel bound to yield ; and must therefore
examine the évidence laid before us to show, that a part of the
demands considered and allowed by the arbitrators, were not
embraced in the submission.　The most considerable of the
claims presented to us by the evidence, as being improperly al-
lowed, if the defendants' view of the matter is correct, are the
two joint and several notes to H. Seymour & Co., for $1000
each, signed by Huggins and Richardson, and by one Campbell,
who appears to be a surety for the others.　It is said these
notes are not within the submission.　By the condition of the
bond, it appears, that Richardson and Huggins had been part-

ners and that they had partnership property, and partnership debts and accounts between them, as individuals ; and by each, with the firm, and they agreed to exhibit and divide the notes, accounts and property of the partnership, and each to assume and pay partnership debts and liabilities to the amount of the property assigned to them respectively, and lest they should not be able to adjust and settle all matters and things between them, and with a view to make provision for a full and perfect settlement of all things which are now or may be in controversy between them, they appoint arbitrators to award concerning all manner of actions, controversies and demands of every nature, which may exist between the parties, at the expiration of six months from the date, and which shall not be within said term of six months adjusted and settled between the parties ; and very full powers are given to the arbitrators to examine the parties, and to call for such books and papers, as they should deem necessary for a full examination and determination of all matters and things in controversy.

The objection to the allowance of these notes is, that joint and several notes are not embraced by the submission ; and under that denomination, it is true, they are not ; but if they appear upon the evidence to be matters and things between these parties, if they are matters in controversy between them, or if they are the subject of demands, by one or both these parties upon the other, it seems to us that this is all that can be required to bring them within the fair and natural import of the very general terms made use of in this bond. Neither arguments nor evidence can be required to satisfy us, that " for a full and perfect settlement of all things, which are now or may be in controversy between" these parties, it would usually be necessary, that notes like these should be considered, by the referees, and a determination made which should settle the rights and duties of the parties in regard to them, as was done in this case. The great controversy, between these parties, manifestly was how the property, and demands existing in favor of and against the partnership, and the matters existing between the parties, should be adjusted and disposed of, how the property and claims they held

as partners, should be applied to discharge their liabilities to others and to each other. Everything embraced in this controversy was referred; whether it was a partnership matter or not.

The evidence introduced by the defendants shows these notes to be joint and several notes, and there leaves the matter. But if we should assume, with the defendants, that only partnership claims and individual accounts, in the narrowest sense of the phrases, were included, it by no means follows, from the form of the paper, that they are not partnership notes. The form of negotiable paper is, at most, the slightest *primâ facié* evidence of the true character and relations of the parties whose names appear upon it. The actual debtor may appear as a principal or surety, as drawer, maker, acceptor or endorser; and the members of a firm may appear, either upon the face or back, either in their individual names, or in the name of the firm, in any of the capacities mentioned, and as between themselves, it is wholly immaterial in which. If the paper is made or signed, in any manner, in the course of the business of the firm, and for the purposes of the firm, it is partnership paper. When, therefore, the defendants stop short with showing these notes, to which they object, to be joint and several notes, they failed to show that they were not notes of the firm. And, as we have already decided, we shall not presume against the award of the arbitrators, that matters which have been laid before them and have been considered and determined by them, as partnership claims, are not matters included in the submission, merely because they are such that they may not have been properly included in the award. The party who assails an award, must clearly go further, than merely to show that the referees may have erred.

But if there could be any doubt upon this point of the case, the evidence laid before us by the defendants themselves, seems to us perfectly conclusive, that these joint and several notes were given for a partnership indebtedness. Mr. Hall, one of the arbitrators, testifies that Huggins appeared as book-keeper, and all the showing, so far as the notes and accounts were concerned, was made by him, and no objection was made by him, or his counsel, to the consideration of any matter, on which the re-

ferees passed, and he says he remembers, that there was an indebtedness upon notes to H. Seymour & Co., presented as a company debt. He does not recollect that they were joint and several, but he finds upon the book which was presented and passed upon by the arbitrators, memoranda of two notes to Seymour & Co., for $1000 each, dated Nov. 1, 1840, shown to be those in question by the indorsements, and which he has no doubt were passed upon by the arbitrators. This testimony is supported by that of Otis Amidown, and gainsaid by no one, and it is to our minds very satisfactory evidence, as it must have been to the arbitrators, that those notes were in fact, partnership notes, as Huggins alleged. They were then properly considered, and allowed, as partnership debts ; and the motion before us cannot be supported upon this part of the evidence.

There remains, then, the evidence in regard to the sum of $21.91, part of the account of H. Carlton. The claim was for professional services, growing out of the partnership transactions, but at a date more than six months after the date of the bond. Admitting that claim ought not to have been received or considered under this bond,—which is not perhaps a necessary admission, since the bond evidently has reference to a submission of all matters which should not have been settled by the parties, within six months of the date of the bond, — we may look at the evidence, to see the circumstances under which it was presented to the arbitrators. This was one of the claims inserted in the book marked " A," produced and shown to them by Huggins himself, as one of the claims which he alleged were proper to be allowed. Were then Huggins the only defendant in the case, it is very clear, he could not be heard to make this objection. It would be a gross fraud in him to present to the arbitrators a claim as proper to be allowed, and upon its allowance to object to the award, on that account.

It does not seem easy to find any ground, on which the other defendants can equitably or reasonably insist, that this allowance should discharge them, unless it is that of a fraud designed to be practised upon them by the parties directly interested. And no such fraud is pretended. Any admission, made in good faith

by either of the parties, either in presence of the arbitrators or duly proved before them, must be admissible in evidence; and the arbitrators were fully authorized to act upon and to base their award upon it. And when one of the parties not only admits but insists, that a particular item in debate is proper to be allowed, there can be no re-hearing upon the question, whether or not the arbitrators were misled by false evidence. That was a matter, upon which both principal and surety had agreed to be bound by the determination of the arbitrators.

But, however this may be, it is made certain, by the evidence, that this claim has been paid and discharged by Huggins, and no longer constitutes part of the claim against the sureties in this case. Though we do not feel called upon to question the correctness of the general principle, laid down in *Adams v. Adams*, 8 N. H. Rep., 82, that the court will look only to the award itself for the means of rejecting a claim, not submitted, and therefore improperly allowed, yet we have no doubt, that where it appears by the same evidence which proves the allowance of a demand not submitted, that the same demand has been paid, or released, or in any way discharged, that the award should not be set aside for that cause, in case the allowance of such claim has merely the effect to increase the amount of the award against the party objecting, and the other party is satisfied. In such a case the award should be held valid, and effectual for the residue, just as a judgment, exceeding the amount of the *ad damnum* of the writ, will not be set aside for that cause, in case the excess is remitted. In this case, the evidence shows this claim of $21.91 was specifically allowed, the award against Huggins was increased by that amount, property of the firm to meet it was awarded to him, and of this the plaintiff does not complain. If the plaintiff releases this access, Huggins cannot complain of the award. If Huggins, who is estopped to complain, pays it, his sureties are in no way injured.

The powers of this court and of the court of common pleas, are very ample in relation to the rendition of judgments and the award of execution on bonds. They are to examine and render judgment, not for the amount of the penalty, nor in a case like

this, for the amount of the award, but for such sum as shall appear to be equitably due. Rev. Stat., chap. 190, § 8. If, then, upon a hearing in chancery, it should appear, that any part of the award has been paid or released, the amount of such payment would, of course, be deducted. So far then as relates to this case, we are not called upon to exert any of the extraordinary powers which we may be supposed to have, to prevent injustice.

Besides this, the defendants have the right of review, and by a long established rule of the court, (*Reg. Gen.*, No. 47,) they can have a stay of execution, except as to costs, upon giving security for the payment of what may be recovered ultimately against them, upon review; unless the plaintiff shall give like security to re-pay what may be recovered against him upon review. And these provisions seem to us to afford sufficient security, against any serious inconveniences from our leaving the parties to their ordinary remedy.

*The motion must be denied.*